DANIEL, J.
It appears from the record, that upon the hearing of the case before the Circuit court, it was both proved, and admitted by the parties, that the appellant was a good and unexceptionable guardian, and had demeaned himself as such in all things; and also, that Philips, the grandfather of the infant appellee, whom the said appellee proposed and nominated as his guardian, was a good and unexceptionable man, and as well qualified as the appellant to be guardian of the said appellee. And the record discloses no fact showing or suggesting a reason why the said appellee desired the change which he asked the court to make. The single issue, therefore, which was presented for the decision of the Circuit court, and which is now to be settled here, is, whether a minor, for whom a guardian has been regularly appointed by a County court under the provisions of the Code of 1849, -whilst he was within the age of fourteen years, on attaining to *that age, has the right, at his more election, to have his guardian thus appointed displaced, and a new one, of his nomination, substituted.
That the provisions of the Code on the subject do not, in terms, give or save to the minor such a right, is obvious. By the 1st section of chapter 127, p. 533, power is given to everjr father, by his last will and testament, to appoint a guardian for his child for such time, during its infancy, as he shall direct. And by the third section, the Circuit, County or Corporation court of any county of corporation in which any minor resides, or, if he be a resident out of the state in which he has any estate*, is authorized to appoint a guardian for him. unless he have a guardian appointed as aforesaid by his father. The fourth section then proceeds to declare, that “if the minor is under the age of fourteen years,the court may nominate and appoint his guardian : if he is above that age, he may, in the presence of the court, or in writing acknowledged before a justice, nominate his own guardian, who, if approved by the court, shall be appointed accordingly.”
Of the six sections of the chapter concerning the appointment of guardians, the three just cited alone have any bearing on the question. Of the remaining sections, the seventh, eighth, ninth and tenth relate to the powers and duties of guardians, and the eleventh and twelfth concern the power of the chancery courts over the relation of guardian and ward, and declare how infants may sue. And of these, the seventh alone demands present notice. That section declares, that “every guardian who shall be appointed as aforesaid, and give bond when it is required, shall have the custody of his ward, and the possession, care and management of his estate, real and personal; and out of the proceeds of such estate shall provide for his maintenance and education. But the father of the minor, if living; and in ca.se of his death, the mother, *while she remains unmarried, shall, if fit for the trust, be entitled to the custody of the person of the minor, and to the care of his education. And unless the guardian shall sooner die, be removed, or resign his trust (which the court that appointed him may allow him to do), he shall continue in office until the minor, being a male, shall attain the age of twenty-one years; or being a female, shall attain that age or marry; or in the case of a testamentary guardianship, until the termination of the period limited therefor.”
The power of the court, by which a guardian has been appointed, to revoke his powers and appoint a new guardian in his place, is conferred by the 11th and 13th sections of chapter 132 of the Code, p. 550. The former of these sections (amongst other things) declares, that the court, under the order of which any fiduciary derives his authority, “may, whenever from ari3T cause it appears proper, revoke and annul his powers; ” and the latter provides, that “ after the date of any order revoking and annulling the powers of any fiduciary, the court in which he qualified shall exercise such jurisdiction, either by appointing- an administrator de bonis non, or a new guardian, or otherwise, as it could have exercised if the said fiduciary had died at that date.”
It is obvious, that the right given to the minor to nominate his guardian, by the 4th section of chapter 127, extends, in terms, to the case only where, there being no incumbent in the office under an appointment by the court, or by the will of the father, the court is about to appoint a guardian. In such case, if the minor be under the age of fourteen years, the court appoints one of its own selection. But if the minor is above the age of fourteen years, he has the right to nominate his own guardian, who, if approved by the court (that is, I apprehend, if a fit and proper person, worthy to be approved by the court), is to receive the appointment.
*It is equally clear, that there is nothing in the 7th section of said chapter which points to the arrival of the ward at the age of fourteen years as the limitation of the guardian’s office, or which can be relied on, in terms, as conferring upon the ward the right, on attaining to that age, to change his guardian. And I cannot see that the argument in favor of the right, derives any support from the provisions of the 11th and 13th sections’of chapter 132 (cited at the bar and already referred to), giving to the court making the appointment the power to revoke and annul the pow-ers of the guardian, and appoint a new one, when from any cause-it appears proper to such court so to do.
To suppose such a right to be embraced within the provisions of these sections, *752 seems to me necessarily to impute to the legislature a very awkward and immethodical wa.y of legislating upon the subject. Por whilst the legislature knew that the right had been extensively recognized and acted upon in the practice of our County courts, they also knew that the laws by which it was supposed to be conferred, were in a confused and unsettled state. In this condition of things, it is difficult to suppose that if the legislature intended to give or save to the ward such a right, they would have omitted all mention of it whilst engaged in fixing the term of the guardian’s office, and have left it to be deduced from the power given to the court to revoke the powers of the guardian, for cause. In this connection, it is to be observed too, that the right claimed is one which is, in its very nature, positive, peremptory, decisive; and in a Code systematically arranged, we should hardly expect to find the exhibition of such a right classed as a reason for judicial action with causes whose sufficiency is to be determined by the sense of propriety and discretion of the court. And indeed, I take • it, that it is in no degree the office of the provision under consideration to ascertain or define the rights of the ward. The power of the court *to revoke the powers of the fiduciary, for proper cause, is conferred as a means of protecting rights already ascertained, and enforcing the performance of duties already prescribed, and cannot be looked to as the source from whence to deduce any right in the ward which the law has not elsewhere already declared or recognized.
We have already shown that there is no express recognition of the existence of the right in question in that part of the Code where (if any where) we should naturally expect to find it. Not only so, but to my mind, the denial of the right involved in the terms of the 7th section of chapter 127 falls very little (if at all) short, in conclusiveness, of a declaration in. totidem verbis that henceforth the ward shall have no such right.
The liability of the guardian to be removed from office is, in terms, attached as well to a guardian appointed by the will of the father as to one appointed by the court; and the declaration that (unless removed) a guardian appointed by the court shall continue in office until the minor, being a male, shall attain the age of twenty-one years, is equally explicit with the declaration that the testamentary guardian shall continue in office until the termination of the period limited therefor in the will by which he is appointed. The evidence of an intent in the legislature to deny the right in question, contained in a declaration that the court may appoint a guardian, and that when appointed he is to continue in office until the ward attains the age of twenty-one years, is just as conclusive as that contained in the declaration that the father may by his will appoint a guardian, who is to continue in office until the termination of the period limited in the will. In the case of a guardian appointed bjr will, the right in question, unless expressly provided for, is, I apprehend, without doubt superseded. *Such is the well settled effect ascribed to the statute, 12 Cha. 2, c. 24, from which the provision of ours, ' allowing the appointment of a guardian by will, is substantially taken. Thomas’ Coke 181, note; 2 Kent’s Comm. 235. What room is then left for the argument that the same consequence does not flow from the appointment of a guardian by the court?
The legislative provisions under which the practice of the County courts, already mentioned, grew up, were, in several most essential particulars, wholly different from the provisions of the Code under consideration. There was no statute declaring that a guardian appointed by the court should continue in office till the ward arrived at the age of twenty-one years. Indeed, neither in the act of 1819, nor in the acts of 1785 and 1792, was any authority, in terms, conferred upon the County courts to make original appointments of guardians, as had been done in the act of 1748. And in the 1st section of the act of 1785 (12 Hen. Stat. 195), in the 2d section of the act of 1792 (1 Stat. at large, N. S. 104), and in the 4th section of the act of 1819 (1 Rev. Code 406), power was given to the Chancery courts “to require security from any guardian in socage.” Notwithstanding this indirect recognition of the existence of the guardianship in socage, by the legislature, and omission to declare an}’ authority in the County courts to. make original appointments of guardians, a practice prevailed in the County courts of making such appointments ; and this, without any regard to the rights of the persons entitled to such appointments according to the laws of the guardianship in socage: though the right of the ward, founded in the 'same laws, to terminate the guardianship on arriving at the age of fourteen years, was (from a supposed analogy doubtless) still recognized and respected. The revisors, in their report (653-4), call the attention of thelegis-lature to this state of ^things, and to-the doubts which existed, on the one hand, as to whether, since the abolishing of all feudal tenures by our act of 1779, guardianship in socage could with propriety (notwithstanding the implied recognition before adverted to) be said to exist in Virginia ; and the other, as to whether the County courts had not usurped authority in undertaking to make original appointments ; and conclude by saying, that in order, if possible, to remove all ambiguity in the law, they had thought it best “to-omit anjr reference to the guardianship in socage, to retain the provision of the act of' 1748, and define the powers and duties of guardians.”
The law (with some immaterial alterations) has been enacted as reported by the-revisors; and, as we have seen, after giving to the father the right to appoint a guardian for his child by his will, it vests. *753 the Circuit and County courts with full power to appoint guardians for all minors who have not testamentary guardians; declares that the guardian appointed by will shall continue in office till the termination of the period limited in the will, and that the guardian appointed by the court shall continue in office till the ward arrives at the age of twenty-one years; omits any reference to the guardianship in socage; and whilst it gives to the guardian the possession, care and management of the ward’s estate, real and personal, omits the provisions of the acts ox 1794 and 1819, which, in giving to guardians the power to make leases, declared that the same should not exceed the period when the ward should arrive at the age of fourteen years.
I can see nothing on the face of the law, or in the history of the circumstances preceding and attending its passage, from which to conclude that it was the purpose of the legislature to give or save to the ward the right claimed in this case. On the contrary, the ^'intention to deny the existence of the right is plainly to be deduced, not only from the language of the law, where it has spoken on the subject, but also from the obvious purpose and meaning of its silence where it should have spoken, if it had intended to recognize or save the right.
Upon the whole, it seems to me that the order of the Circuit court is erroneous; and I am for reversing it and affirming that of the County court.
The other judges concurred in the opinion of Daniel, J.
Judgment reversed.